UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

GORDON MCMAIN,

Plaintiff,

v.

COLLETTE PETERS; DR. SHELTON;
DR. ELLIOT-BLAKESLEE; J. BELL;
J. TAYLOR; MS. SMITH,

Defendants.

Case No. 2:13-cv-01632-AA

OPINION AND ORDER

AIKEN, District Judge:

Plaintiff, a former inmate at the Snake River Correctional Institution, filed suit pursuant to 42 U.S.C. § 1983 and alleged deliberate indifference to his serious medical needs and the denial of equal protection under the law. Defendant Shelton, the sole remaining defendant, now moves for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, Dr. Shelton's motion is granted.

BACKGROUND

Plaintiff is a former inmate who was housed at the Snake River Correctional Institution (SRCI) during all relevant time periods.

1 — OPINION AND ORDER

Plaintiff alleges that in 2009, prior to his incarceration, he was prescribed testosterone to elevate his testosterone levels. Compl. at 3 (ECF No. 2). Plaintiff further alleges that during his pretrial detention between May and October 2011, he continued to receive bimonthly injections of testosterone. *Id.* Plaintiff claims that these injections were necessary to treat his bipolar disorder and post-traumatic stress disorder. *Id.* at 3-4.

On October 5, 2011, plaintiff was transferred to the custody the Oregon Department of Corrections (ODOC), when he was 41 years old. Shelton Decl. ¶ 3.

On December 28, 2011, plaintiff saw Dr. Elliott-Blakeslee and complained of low testosterone levels and requested testosterone injections. *Id.* ¶ 25. Lab tests conducted on November 28, 2011 had showed that plaintiff's testosterone level was 216 ng/dL, below normal levels. *Id.* ¶ 24.[1] Plaintiff maintains that he was told testosterone injections were not prescribed to inmates unless they had been diagnosed with Klinefelter Syndrome. Compl. at 5.[2] Dr. Elliott-Blakeslee doubted that plaintiff had Klinefelter Syndrome and ordered additional lab tests to confirm her diagnosis. *Id.*

On May 7, 2012, plaintiff's testosterone level was at 202.8 ng/dL, which was below the normal range of 249-836 ng/dL for his age. Shelton Decl. ¶ 27.

On May 23, 2012, Dr. Elliott-Blakeslee indicated she was presenting plaintiff's request for testosterone therapy to the Therapeutic Level of Care (TLC) Committee. *Id.* ¶ 28.

---

[1] According to defendant, the normal testosterone range for men ages 19-29 is about 270 to 1,070 ng/dL with an average of 679 ng/dL at age 20. Shelton Decl. ¶ 8. From the ages of 30 to 40, testosterone levels gradually decline about 1 percent per year. *Id.*

[2] Klinefelter Syndrome is a genetic condition resulting when a person is born with an extra copy of the X chromosome. According to Dr. Shelton, Klinefelter Syndrome may adversely affect testicular growth, leading to lower production of testosterone, and supplemental testosterone may be useful to continue "the development of adult male characteristics." Shelton Decl. ¶ 10.

On May 30, 2012, Dr. Elliott-Blakeslee noted that the TLC Committee denied the request on grounds that plaintiff did not have a medical need for testosterone treatment. *Id.* ¶ 29.

On June 12, 2012, plaintiff told Dr. Elliott-Blakeslee that that his low testosterone level may have been contributing to his generalized anxiety. *Id.* ¶ 30. Dr. Elliott-Blakeslee asked the TLC Committee to once again consider plaintiff for testosterone injections.

On June 13, 2012, Dr. Shelton responded that prescribing testosterone for generalized anxiety was questionable when other common medications were available and approved for treating anxiety. *Id.* According to Dr. Shelton, testosterone injections in middle-aged and older men have been found to pose risks and have debatable medical value. Shelton Decl. ¶ 30.

On December 4, 2012, plaintiff again asked Dr. Elliott-Blakeslee for testosterone injections. *Id.* ¶ 32. She again noted that plaintiff did not have Klinefelter Syndrome.

On December 10, 2012, plaintiff's testosterone level was at 206.9 ng/dL, which was a slight increase from his testosterone level on May 7, 2012. *Id.* ¶ 33.

On May 22, 2013, after another referral, the TLC Committee again denied plaintiff testosterone injections on grounds that they were not medically necessary. *Id.* ¶ 34.

On June 5, 2013, plaintiff's testosterone levels had increased to 241.7 ng/dL, only slightly below low-normal levels. *Id.* ¶ 36.

On July 31, 2013, plaintiff repeated his request for testosterone and said he was "certain" he had Klinefelter Syndrome. Shelton Decl. ¶ 38. Dr. Elliot-Blakesee noted that plaintiff did not have symptoms of Klinefelter Syndrome and that she intended to order additional lab tests for the TLC's consideration. *Id.* However, plaintiff refused to allow a blood draw for the lab tests to be conducted. *Id.* ¶ 39.

On September 5, 2013, Dr. Shelton responded to a letter plaintiff had written to the ODOC Director and explained that plaintiff's testosterone level was just outside of low normal and his thyroid stimulating hormone was within normal limits and that testosterone treatments were not medically necessary. *Id.* ¶ 40.

On September 16, 2013, plaintiff filed suit in this Court.

On October 9, 2014, plaintiff's testosterone levels were tested at a normal level of 399.8 ng/dL. *Id.* ¶ 42.

## DISCUSSION

Plaintiff alleges that Dr. Shelton's refusal to approve testosterone treatment constituted deliberate indifference to his serious medical needs and denied him equal protection under the law. Defendants move for summary judgment on grounds that the evidence does not demonstrate deliberate indifference to plaintiff's serious medical needs or a violation of plaintiff's equal protection rights. To prevail, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

### A. Deliberate Indifference to a Serious Medical Need

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."). To

4 — OPINION AND ORDER

sustain a claim for deliberate indifference to his serious medical needs, plaintiff must establish the existence of "a serious medical need" and show that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Id.*; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746.

As an initial matter, plaintiff fails to submit any evidence to show that he preference for testosterone injections constituted a serious medical need. A serious medical need includes "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of a chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). Aside from lower than normal testosterone levels, plaintiff identifies no injury, no condition that significantly affected his daily activities, and no harm resulting from the denial of testosterone injections. Plaintiff suggests that the lack of testosterone treatment contributed to his back problems. Pl.'s Response at 7-8 (ECF No. 143). However, plaintiff presents no evidence from a medical provider to support this suggestion, and plaintiff suffered back problems before the TLC committee denied his requests for testosterone. *See* Shelton Decl. ¶¶ 28-29, 45-47. To the extent plaintiff contends that the lack of testosterone affected his mental health, plaintiff admittedly received treatment for mental health issues. Moreover, his testosterone levels increased to a normal level without intervention.

5 — OPINION AND ORDER

Likewise, plaintiff fails to show that Dr. Shelton acted with deliberate indifference when denying plaintiff's requests for testosterone. Dr. Shelton denied plaintiff's requests because plaintiff's testosterone levels were only slightly below normal and he believed testosterone injections had questionable medical value for treating plaintiff's mental health issues when other approved medications and treatments were available. Shelton Decl. ¶ 30. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted).

Plaintiff presents no evidence that Dr. Shelton's actions were medically unacceptable or disregarded a known risk to plaintiff's health. Plaintiff maintains that a neurosurgeon recommended that plaintiff receive an "endocrine workup and treatment as indicated." Pl.'s Response at 7. However, plaintiff did not submit evidence of this recommendation; regardless, such a recommendation would have not suggested that testosterone treatment was medically necessary. Furthermore, as noted above, plaintiff received alternative mental health treatment, and his testosterone levels increased without testosterone treatment. The fact that plaintiff had a different opinion about his need for testosterone does not render Dr. Shelton's actions deliberately indifferent. A difference of opinion between a prisoner and a prison medical provider is "insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Consequently, Dr. Shelton is entitled to summary judgment on plaintiff's deliberate indifference claim.

B. Equal Protection

Plaintiff next alleges that Dr. Shelton violated his Fourteenth Amendment right to equal protection by denying him testosterone injections when inmates who experienced similar symptoms and received a diagnosis of Klinefelter Syndrome were allowed to receive them. Comp. at 13; Pl.'s Response at 10-11.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "A successful equal protection claim may be brought by a 'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To sustain an equal protection claim under this theory, plaintiff must establish that Dr. Shelton, "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff does not allege or introduce any evidence that Dr. Shelton approved testosterone injections for inmates who did not have Klinefelter Syndrome and were similarly situated to him. Instead, plaintiff maintains that he was "similarly situated" to those *with* Klinefelter Syndrome because he experienced similar symptoms, and he should not have been treated differently than a prisoner diagnosed with that disease. In other words, plaintiff does not allege that he was treated differently from inmates like him. The fact that plaintiff believes his symptoms were similar to those caused by Klinefelter Syndrome does not render him "similarly-situated" for purposes of Equal Protection analysis.

7 — OPINION AND ORDER

Regardless, given his lack of diagnosis for Klinefelter Syndrome, plaintiff cannot show that the denial of testosterone injections was without rational basis.

## CONCLUSION

Defendant Shelton's Motion for Summary Judgment (ECF No. 138) is GRANTED.

IT IS SO ORDERED.

DATED this 2ND day of August, 2018.

Ann Aiken
United States District Judge